IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WHEREHOUSE ENTERTAINMENT INC., a Delaware corporation, et al.,[1] | Case No. 03-10224 (PJW) |
| | Jointly Administered |
| Debtors. | |
| | Objection Deadline: 2/14/03 @ 4:00 p.m. |
| | Hearing Date: 2/21/03 @ 1:30 p.m. |

## APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER AUTHORIZING THE RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO THE DEBTORS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this application (the "Application") for the entry of an order authorizing the retention of FTI Consulting, Inc. as their financial advisors in these cases. In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

1. Wherehouse Entertainment, Inc., a Delaware corporation ("WEI"), and its direct and indirect wholly-owned subsidiaries Wherehouse Holding I Co., Inc., a Delaware corporation ("WEI Holding I"), Wherehouse Holding II Co., Inc., a Delaware corporation ("WEI Holding II"), Wherehouse Subsidiary I Co., Inc., a Delaware corporation ("WEI Subsidiary I"), Wherehouse Subsidiary II Co., Inc., a California corporation ("WEI Subsidiary II"), Wherehouse

---

[1] The Debtors are the following entities: Wherehouse Entertainment, Inc., Wherehouse Holding I Co., Inc., Wherehouse Holding II Co., Inc., Wherehouse Subsidiary I Co., Inc., Wherehouse Subsidiary II Co., Inc., Wherehouse Subsidiary III Co., Inc. and Wherehouse.com, Inc.

Subsidiary III Co., Inc., a Delaware corporation ("WEI Subsidiary III")[2] and Wherehouse.com, Inc., a California corporation each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on January 21, 2003 (the "Petition Date"). Pursuant to Bankruptcy Code Sections 1107(a) and 1108, the Debtors are operating their business and managing their affairs as debtors and debtors in possession. As of the date hereof, no trustee, examiner or committee has been appointed in any of these Chapter 11 cases.

2. WEI is a retailer of prerecorded music and other entertainment products. WEI's stores generally sell a broad array of entertainment products. WEI sells prerecorded music, videocassettes, DVDs, video games, personal electronics (including without limitation personal stereos, portable stereos, headphones and related merchandise), blank audiocassettes and videocassettes and accessories. WEI's total revenue for its most recent fiscal year, ended January 31, 2002, was $599.9 million. Of that, the percentage contributed by merchandise sales was 99.3%. WEI's other revenue source is the rental of prerecorded videocassettes, DVDs and other products.

3. WEI is one of the largest retailers of prerecorded music and related media and electronics in the United States, both in terms of revenues and store locations. As of the Petition Date, WEI operated approximately 370 stores in 23 states (collectively, the "Wherehouse Stores"). All but 13 of WEI's stores operate under the names "The Wherehouse," "Wherehouse Music," or "Wherehouse Entertainment." The remaining stores operate under the names "Tu Musica," "Xchange," "Wherehouse Outlet" or "Odyssey." The Debtors also maintain executive offices in Torrance, California and a distribution center in Carson, California. The

---

[2] WEI Holding I, WEI Holding II, WEI Subsidiary I, WEI Subsidiary II, and WEI Subsidiary III are collectively referred to herein as the "Wherehouse Subsidiaries."

2

premises for WEI's stores, executive offices and distribution center are leased with the exception of one store that is owned by WEI.

4. WEI's predecessor ("Old Wherehouse")[3] was formed in 1970. On August 2, 1995, Old Wherehouse and its parent company, WEI Holdings, Inc., a Delaware corporation ("Old Wherehouse Holdings"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware. During the following approximately 1½ years, they restructured their business operations and developed a plan of reorganization. That plan of reorganization (the "Old Wherehouse Plan") was confirmed by an order of the United States Bankruptcy Court for the District of Delaware entered on January 7, 1997. The Old Wherehouse Plan entailed the conversion of essentially all Old Wherehouse's institutional debt into equity in WEI.

5. WEI was formed as a Delaware corporation on November 15, 1996. On January 31, 1997, WEI acquired substantially all the assets of Old Wherehouse and Old Wherehouse Holdings pursuant to the Old Wherehouse Plan.

6. WEI acquired the Wherehouse Subsidiaries on October 26, 1998 in connection with a stock purchase from Viacom International, Inc. ("Viacom"). As a result, WEI owns all of the capital stock of WEI Holding I and WEI Holding II. WEI Holding I in turn owns all of the capital stock of WEI Subsidiary I and WEI Subsidiary III as its sole significant assets. WEI Holding II in turn owns all of the capital stock of WEI Subsidiary II as its sole significant asset.

7. Prior to WEI's purchase of these companies in 1998, they had been operating music retail stores under the name "Blockbuster Music." Subsequent to the

---

[3] Until January 1997, Old Wherehouse was known as Wherehouse Entertainment, Inc. In connection with consummation of its chapter 11 plan of reorganization, Old Wherehouse changed its name to Wherehouse Dissolution Co. and sold substantially all its assets to WEI.

3

acquisition, WEI has conducted all operations at all of these stores under the "Wherehouse Music" name, and the Wherehouse Subsidiaries have been engaged only in holding the leaseholds for the former Blockbuster Music stores. Thus, WEI is the main operating company, employs essentially all the Debtors' employees, and owns all the inventory sold or rented in the stores. The Wherehouse Subsidiaries are real estate holding companies acting as the tenant under the leases for the former Blockbuster Music stores.

8. WEI currently employs approximately 5,300 employees. Approximately 1,600 of these employees are full-time employees, and approximately 3,700 are part-time employees or temporary employees. However, WEI's labor requirements vary based on seasonal business fluctuations, and a large number of additional store and distribution center employees may be added during the peak holiday season. WEI's corporate office staff consists of approximately 260 employees that are responsible for executive and general operational management, buying, merchandising, advertising, finance, accounting, human resources, legal, information systems and real estate management.

9. In the first several years after confirmation of Old Wherehouse's Plan, WEI prospered. However, during the recent past, WEI has been adversely affected by an industry-wide trend adversely affecting specialty music retailers. For example, according to Nielsen SoundScan, an industry analysis group, the music industry has seen total United States album sales for calendar year 2002 diminish by approximately 11%, and CD sales, which account for about 94% of the music industry market, diminish by approximately 9%.[4] For its fiscal year ended January 31, 2002, WEI's same store sales decreased approximately 6.4% and this trend has continued during the current fiscal year. Management attributes this largely to a general weakness in new music releases, CD "burning" and piracy of music over the Internet,

---

[4] Source: Los Angeles Times, January 3, 2003.

and mass merchandisers and electronics retail chains selling new music and DVDs at or below cost. This trend has hit particularly hard at some of WEI's least profitable stores, particularly many of the former Blockbuster Music stores. Thus, during these bankruptcy cases, the Debtors intend to reject the leases for many of their unprofitable stores. Fortunately, WEI has a core group of profitable stores around which it can reorganize and the Debtors intend to pursue such a reorganization as promptly as possible.

**Relief Requested**

10. By this Application, the Debtors seek to employ and retain FTI Consulting, Inc. pursuant to sections 327(a) and 1107 of the Bankruptcy Code to perform financial advisory services for the Debtors in these chapter 11 cases.

11. The Debtors are familiar with the professional standing and reputation of FTI Consulting, Inc. The Debtors further understand that FTI Consulting, Inc. has a wealth of experience in providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

12. On December 24, 2002, FTI Consulting, Inc. was engaged to provide financial advisory services to the Debtors. Since that time, FTI Consulting, Inc. has been developing a great deal of institutional knowledge regarding the Debtors' operations, finances and systems. Such experience and knowledge will be valuable to the Debtors in their efforts to reorganize. Accordingly, the Debtors wish to retain FTI Consulting, Inc. to provide assistance during these cases.

13. The services of FTI Consulting, Inc. are deemed necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully. Further, FTI

Consulting, Inc. is well-qualified and able to represent the Debtors in a cost-effective, efficient and timely manner.

## Scope of Services

14. FTI Consulting, Inc. will provide such consulting and advisory services as FTI Consulting, Inc. and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases, including the following:

<u>Financial Advisory Services</u>

- Assistance to the Debtors in the preparation of financial related disclosures required by the Court, including the Monthly Operating Reports;

- Assistance to the Debtors with information and analyses required pursuant to any use of cash collateral or Debtor-In-Possession ("DIP") financing including, but not limited to, preparation for final hearings regarding the use of cash collateral and DIP financing;

- Assistance with the identification and implementation of short-term cash management procedures;

- Advisory assistance in connection with the development and implementation of key employee retention and other critical employee benefit programs;

- Assistance and advice to the Debtors with respect to the identification of core business assets and the disposition of assets or liquidation of unprofitable operations;

- Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

- Assistance regarding the valuation of the present level of operations and identification of areas of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

- Assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

- Attendance at meetings and assistance in discussions with potential investors, banks and other secured lenders, the Creditors' Committee appointed in this

6

2564124_1 DOC
NB1:587820 1

chapter 11 case, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

- Assistance in the analysis of creditor claims by type, entity and individual claim;

- Assistance in the preparation of information and analysis necessary for the confirmation of a Plan of Reorganization in these chapter 11 cases;

- Assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

- Litigation advisory services with respect to accounting and tax matters, along with expert witness testimony on case-related issues as required by the Debtors; and

- Render such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary that are not duplicative of services provided by other professionals in these proceedings.

15. FTI Consulting, Inc., at the request of the Debtors, may provide additional financial advisory services deemed appropriate as part of its financial advisory role in these cases and necessary for the Debtors' cases.

## FTI Consulting, Inc.'s Disinterestedness

16. FTI Consulting, Inc. has informed the Debtors that, except as may be set forth in the Affidavit of Daniel Scouler (the "Scouler Affidavit") attached hereto as Exhibit "A," it (i) has no connection with the Debtors, its creditors or other parties in interest in these cases, (ii) does not hold any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

17. FTI Consulting, Inc. will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new facts or circumstances are discovered, FTI Consulting, Inc. will supplement its disclosure to the Court.

18. Other than with its own partners and employees, FTI Consulting, Inc. has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these cases.

7

## Terms of Retention; Engagement Agreement

19. FTI Consulting, Inc. is not owed any amounts with respect to its prepetition fees and expenses. The Debtors understand that FTI Consulting, Inc. intends to apply to the Court for allowances of compensation and reimbursement of expenses for all financial advisory support services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding local rules, orders of this Court and guidelines established by the United States Trustee.

20. FTI Consulting, Inc. should be employed under a general retainer because of the variety and complexity of the services that will be required during these proceedings. The terms of FTI's engagement are set forth in the engagement letter attached hereto as Exhibit "B" (the "Engagement Letter"). As indicated in the Scouler Affidavit, FTI is requesting a fixed fee of $125,000 per month for each month that FTI is employed as financial advisor to the Debtors in these cases. Further, as set forth in the Engagement Agreement, contingent upon confirmation of a Chapter 11 plan, FTI will be paid (i) one million dollars upon confirmation of a Plan of Reorganization under Chapter 11; (ii) plus 5% of the actual cumulative EBITDA of the Reorganized Debtor for the six month period beginning at the confirmation of a Plan of Reorganization, payable within 30 days of the end of the six month period. Additionally, FTI seeks reimbursement of reasonable out-of-pocket expenses incurred in connection with rendering services to the Debtors in these cases.

## Indemnification Provisions

21. The Debtors and FTI have agreed, subject to the Court's approval of this Application, that the Debtors will indemnify and hold FTI Consulting, Inc. harmless against any and all losses, claims, damages, liabilities, penalties, judgments, awards, amounts paid in settlement, costs, fees, expenses and disbursements including, without limitation, the costs, fees,

8

expenses and disbursements, as and when incurred, of investigating, preparing or defending any action, suit, proceeding or investigation (whether or not in connection with proceedings or litigation in which FTI Consulting, Inc. is a party), directly or indirectly caused by, relating to, based upon, arising out of or in connection with the engagement of FTI Consulting, Inc. by the Debtors or any services rendered pursuant to such engagement; provided that the Debtors will not be responsible for payment of indemnification amounts hereunder (and any indemnified person shall reimburse the Debtors for indemnification amounts already paid) that are determined by a final judgment of a court of competent jurisdiction to have resulted from an indemnified person's bad faith, self dealing, gross negligence or willful misconduct. These indemnification provisions extend to the officers, directors, principals, members, managers, stockholders, employees, representatives, agents and counsel of FTI Consulting, Inc. and shall survive the termination or expiration of the engagement. Costs and expenses that are subject to indemnification hereunder shall, at the request of an indemnified person, be advanced by the Debtors to or on behalf of such indemnified person prior to final resolution of a matter, so long as such indemnified person shall have provided the Debtors with a written undertaking to reimburse the Debtors for all amounts so advanced if it is ultimately determined that the indemnified person is not entitled to indemnification hereunder. By this Application, the Debtors seek authorization to enter into these provisions of the Engagement Agreement.

## Notice

22. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware, (2) counsel to Congress Financial Corporation (Western), the Debtors' secured working capital lender, (3) counsel to the Informal Committee of Secured Trade Vendors, (4) the Bank of New York, (5) counsel to the official committee of unsecured creditors,

9
2564124_1 DOC
NB1:587820 1

and (6) those parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## No Prior Request

23. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit "C," approving the employment of FTI Consulting, Inc. as financial advisors to the Debtors for the purposes set forth above and granting such other and further relief as the Court may deem proper.

Dated: February 6, 2003
      Wilmington, Delaware

Respectfully submitted,

*Mark Justis* (signature)

Mark D. Collins (DE 2981)
Paul N. Heath (DE 3704)
Marc T. Foster (DE 4256)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Ben H. Logan
Suzzanne Uhland
Vicki A. Nash
Brian M. Metcalf
O'MELVENY & MYERS
400 S. Hope Street
Los Angeles, California 90071-2899
(213) 430-6000

PROPOSED COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION


2564124_1.DOC
NB1:587820.1